**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

MELODY INMAN,                                            Case No. 1:11-cv-838

            Plaintiff,                                   Beckwith, J.
                                                         Bowman, M.J.

        v.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

            Defendant.

**REPORT AND RECOMMENDATION**

        Plaintiff Melody Inman filed this Social Security appeal in order to challenge the

Defendant's finding that she is not disabled.  See 42 U.S.C. §405(g).  Proceeding

through counsel, Plaintiff presents five claims of error for this Court's review.  As

explained below, I conclude that the ALJ's finding of non-disability should be

AFFIRMED, because it is supported by substantial evidence in the administrative

record.

        **I. Summary of Administrative Record**

        In May 2009, Plaintiff filed applications for Disability Insurance Benefits ("DIB"),

and for Supplemental Security Income ("SSI"), alleging disability due to mental

impairments.  After Plaintiff's claims were denied initially and upon reconsideration, she

requested a hearing de novo before an Administrative Law Judge  ("ALJ").  On March

31, 2011, an evidentiary hearing was held before ALJ Kenneth Wilson, at which Plaintiff

was represented by counsel.  (Tr. 50-81).  At the hearing, Plaintiff amended her

disability onset date to the date of her application, May 18, 2009, and withdrew her claim for DIB.  After hearing testimony from Plaintiff, and from a vocational expert ("VE"), the ALJ denied Plaintiff's applications in a written decision dated April 12, 2011. (Tr. 6-26).

The record reflects that Plaintiff was 31 years old at the time of her alleged disability date, and has a limited education, having left school after seventh grade due to pregnancy.  (Tr. 69).  Plaintiff has past relevant work as a server, short order cook, and laborer.  (Tr. 19).

The ALJ found that Plaintiff had only two "severe" mental impairments: "bipolar/mood disorder and panic disorder without agoraphobia." (Tr. 12).  In addition, the ALJ determined that Plaintiff had "non-severe" impairments, including "post-traumatic stress disorder, social phobia and marijuana abuse (reportedly in remission)." (*Id*.).  However, the ALJ concluded that none of Plaintiff's impairments, alone or in combination, met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subp. P, Appendix 1.  (Tr. 13).  Instead, the ALJ determined that Plaintiff retains the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, restricted only by the following non-exertional limitations:

> [T]he claimant could understand, remember, and carryout simple instructions and tasks, but not detailed or complex instructions, in a work environment that allows her to adapt to changes gradually.  Further, she could maintain attention and concentration for two-hour increments with normal breaks during an eight-hour workday.  Finally, the claimant's job should require only minimal supervision, limited contact with co-workers, and occasional contact with the general public.

(Tr. 14).

Based upon the testimony from the vocational expert, and given Plaintiff's age, education, work experience, and RFC, the ALJ concluded that Plaintiff was unable to perform any of her past relevant work, but determined that she could perform "jobs that exist in significant numbers in the national economy." (Tr. 20). Therefore, the ALJ determined that Plaintiff was not under a disability, as defined in the Social Security Regulations, and is not entitled to SSI. (Tr. 21).

The Appeals Council denied Plaintiff's request for review. Therefore, the ALJ's decision stands as the Defendant's final determination. On appeal to this Court, Plaintiff argues that the ALJ erred: (1) by discounting the opinions of Plaintiff's treating psychiatrist (2) by criticizing Plaintiff for failing to provide objective evidence of psychological complaints; (3) by finding that Plaintiff had not received treatment prior to May 2009; (4) by failing to address favorable evidence, including the opinion of an examining psychologist; and (5) by mistakenly relying on VE testimony that was inconsistent with the Dictionary of Occupational Titles ("DOT").[1] As discussed below, the Court finds no error and therefore recommends that the Commissioner's decision be affirmed.

**II. Analysis**

**A. Judicial Standard of Review**

To be eligible for benefits, a claimant must be under a "disability" within the definition of the Social Security Act. See 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1)

---

[1]These five errors are identified in the "introductory statement" portion of Plaintiff's brief, but a slightly different set of six errors are identified in the body of Plaintiff's memorandum. Despite this confusion, the undersigned has endeavored to discuss all errors identified in any section of Plaintiff's memorandum.

performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies.  *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted).  In conducting this review, the court should consider the record as a whole.  *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978).  If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability.  *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).  As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. . .. The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts.  If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.*  (citations omitted).

In considering an application for supplemental security income or disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of

Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy.  *See Combs v.  Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

### B.  Plaintiff's Statement of Errors

Plaintiff's assertions of error relate primarily to the fourth and fifth steps of the sequential analysis.   For the convenience of the Court, the undersigned has combined discussion of related claims.

### 1.  Failure to Adopt Treating Physician Opinion

Plaintiff first argues that the ALJ improperly "plays doctor" because he did not fully adopt the residual functional capacity ("RFC") opinions of her treating psychiatrist, Dr. Weech.  Her second assignment of error, that the ALJ improperly discounted her subjective complaints, is closely related.

The relevant regulation concerning the opinions of treating physicians, 20 C.F.R. §404.1527(c)(2), provides: "[i]f we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight."  *Id.; see also Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). The treating physician rule requires "the ALJ to generally give greater deference to the opinions of

treating physicians than to the opinions of non-treating physicians."    *See Blakley v. Commissioner of Social Security*, 581 F.3d 399, 406 (6th Cir. 2009).

The reasoning behind the rule has been stated as follows:

[T]hese sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of the claimant's medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

*Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004)(quoting former 20 C.F.R. § 404.1527(d)(2)).

Despite the presumptive weight given to the opinions of the treating physician, if those opinions are not "well-supported" or are inconsistent with other substantial evidence, then the opinions need not be given controlling weight.  Soc. Sec. Ruling 96-2p, 1996 WL 374188, at *2 (July 2, 1996).   In such cases, the ALJ should review additional factors to determine how much weight should be afforded to the opinion, such as "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Blakley,* 581 F.3d at 406; *see also* 20 C.F.R. §404.1527(c)(2).

When the treating physician's opinion is not given controlling weight, the ALJ must provide "good reasons" for doing so.  *Id.*  Good reasons "must be supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Blakley*, 581 F.3d at 406-407; *see also* Soc. Sec. Rul. 96-2p.  An ALJ's failure to provide an adequate explanation for according less

than controlling weight to a treating source may only be excused if the error is harmless or de minimis, such as where "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it." *Blakley*, 581 F.3d at 409 (quoting *Wilson*, 378 F.3d at 547).

Two of Plaintiff's assertions of error contend that the ALJ failed to properly apply the treating physician rule. Dr. Weech was the only "treating physician" who provided any opinions concerning Plaintiff's mental RFC. Plaintiff argues that the ALJ failed to give Dr. Weech's opinions controlling weight, and additionally erred by failing to provide good reasons for discounting his opinions.

**Plaintiff's Mental Health Treatment**

Before reviewing Dr. Weech's opinions, it is helpful to place those opinions in the context of Plaintiff's overall mental health treatment. Plaintiff was charged with flagrant non-support of two of her biological children,[2] and sought mental health treatment after being referred by the court while on home incarceration. (*See* Tr. 293). Records alluding to treatment prior to March 4, 2009 are sparse, but on that date, Plaintiff was evaluated by Ed Connor, Psy.D, in connection with her criminal charges. (Tr. 15). In November 2009, she began counseling with a social worker, Mary Calkins, LISW, at Centerpoint Health, a community mental health facility. She eventually was treated by Dr. Weech at the same facility.

Together with Ms. Calkins, Dr. Weech jointly completed a "Mental Impairment Questionnaire" form on July 29, 2010, shortly after Dr. Weech examined Plaintiff for the

---

[2]Plaintiff has seven living children and two deceased, by five biological fathers. Most of the children have been adopted by others; Plaintiff does not have custody of any of her children.

first time. It is the opinions expressed in that document that the ALJ ultimately discounted.

The completed form indicates diagnoses of panic disorder and PTSD, as well as bipolar disorder. Dr. Weech and Ms. Calkins checked boxes for "marked" impairments in: (1) Plaintiff's abilities to understand, remember and carry out complex job instructions; (2) her ability to work in coordination with or proximity to co-workers without distracting or being distracted by them; and (3) her ability to accept instructions and criticisms from supervisors, relate predictably in social situations, and interact appropriately with the general public. (Tr. 354-355). Dr. Weech and Ms. Calkins further opine that Plaintiff is markedly impaired in her ability to "[m]aintain social functioning," noting that, by history, she has often been fired for angry outbursts at work. (Tr. 355). Last, Dr. Weech and Ms. Calkins indicate that Plaintiff is moderately impaired in her ability to perform a long list of daily activities, noting in particular a problem with the use of public transportation. (*Id.*). Dr. Weech and Ms. Calkins assessed Plaintiff as "moderately" impaired, defined as "limited but satisfactory" in six additional areas, but found she is "not limited by mental impairment" in seven of twenty work-related areas listed on the form. (Tr. 353-355).

When a claimant claims disability from a mental impairment, an ALJ must rate the degree of functional limitation resulting from that impairment with respect to "four broad functional areas," including: "[a]ctivities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." 20 C.F.R. §§404.1520a(b)(2), (c)(3). These four areas are commonly referred to as the "B criteria." *See Rabbers v. Comm'r of Soc. Sec. Admin.*, 582 F.3d 647, 653 (6th Cir.

2009)(citing 20 C.F.R. pt. 404, subpt. P, app. 1, §12.00 et seq.).  Although analysis of the B criteria is reviewed both to determine if an impairment is "severe" and whether a claimant meets or equals a Listed impairment, an ALJ must consider a claimant's functional limitations even if she does not meet or equal a particular Listing.

Turning first to the evaluation of the B criteria, the ALJ disagreed with Dr. Weech insofar as he found that Plaintiff has no more than "mild" limitations in activities of daily living, as opposed to the "limited but satisfactory" assessment by Dr. Weech.  The ALJ further found that Plaintiff has only "moderate" limitations (not "marked") in maintaining social functioning.  (Tr. 13).  Nevertheless, when assessing Plaintiff's functional limitations, the RFC determined by the ALJ arguably accommodated most of the "marked" or "seriously limited but not precluded" areas of impairment found by Dr. Weech.  For example, in terms of Plaintiff's ability to follow instructions and interact with co-workers, supervisors, and the public, the ALJ found that Plaintiff was precluded from understanding, remembering, or carrying out "detailed or complex instructions" and that she could tolerate "only minimal supervision" with "limited contact with co-workers" and not more than "occasional contact with the general public."  (Tr. 14).

The ALJ explained that he was giving "little weight" to the RFC opinion of Dr. Weech, because it was "inconsistent with the substantial objective evidence of record." (Tr. 18).  The ALJ additionally stated:

> Dr. Weech reported the presence of hallucinations, delusions, or paranoid thinking; however, the record documents no indication of hallucinations or delusions, and only periodic mild paranoia. …Moreover, he indicated that the claimant experiences marked diminished interest in activities; yet, as discussed above, the claimant acknowledged fishing, watching movies, going out to dinner, reading, and babysitting children. …Further, even though the claimant initiated treatment with Centerpoint in May of 2009, according to the record, Dr. Weech evaluated the claimant only once prior

9

to completing his medical source statement. …The course of treatment pursued by Dr. Weech is not consistent with what one would expect if the claimant were truly as disabled as he reported.   Dr. Weech also acknowledged that he relied on the claimant's subjective report of symptoms and limitations in forming his opinion; however, as explained elsewhere in the decision, good reasons exist for questioning the reliability of the claimant's subjective complaints. …Finally, Dr. Weech acknowledged that he had not observed the claimant in a work-related setting, which renders his opinion even less persuasive.

(Tr. 18).

Plaintiff criticizes the ALJ's analysis for discounting Plaintiff's "subjective" complaints, arguing that "[a]ssessing subjective symptoms is precisely how psychiatrists form their conclusions."   (Doc. 5 at 4).   Indeed, the Sixth Circuit has noted that a psychiatric report "is not as readily amenable to substantiation by objective laboratory testing as a medical impairment."  *Blankenship v. Bowen*, 874 F.2d 1116, 1121 (6th Cir. 1989)(quoting *Paulin v. Bowen*, 817 F.2d 865, 873 (D.C.Cir. 1987)(additional quotation omitted)).   Plaintiff argues that the symptoms she experiences cannot be measured "objectively," such that the ALJ also erred by failing to acknowledge that her post-traumatic stress disorder and social phobia as "severe" impairments.

Contrary to Plaintiff's premise, the Sixth Circuit has never suggested that a mental impairment can be proven by subjective complaints alone.   Even mental impairments must be "medically determinable."  What courts have emphasized is that, in the mental health context, "clinical and laboratory data may consist of the diagnosis and observations of professionals trained in the field of psychopathology." *Id.*  Thus, a psychiatric report "should not be rejected simply because of the relative imprecision of the psychiatric methodology or the absence of substantial documentation, *unless there are other reasons to question the diagnostic techniques.*"  *Id.* (emphasis added).   In

10

other words, the Sixth Circuit has affirmed that an opinion that is established through "clinical observations" or "proper psychological techniques" can suffice to demonstrate a "medically determinable" disability, while retaining the same standard of review applicable to other medical opinions.  *See Crum v. Sullivan*, 921 F.2d 642, 645 (6th Cir. 1990).   Here, the ALJ did not reject Dr. Weech's opinions solely because he based them upon Plaintiff's subjective complaints.  Instead, the ALJ reasoned that the opinions were not based upon a longitudinal record of Dr. Weech's clinical observations, or any type of psychiatric testing; the ALJ also articulated "other reasons to question the diagnostic techniques" used by Dr. Weech.

The ALJ's analysis, including his concerns with Dr. Weech's reliance on Plaintiff's subjective complaints under the circumstances, reflects no error.  Dr. Weech evaluated Plaintiff on just one occasion for twenty minutes prior to providing his opinion.   (Tr. 367-68).   Dr. Weech's own report acknowledges the limited support for his opinions, given the brevity of his treating relationship.  He explains that his assessment that Plaintiff has "marked" limitations in social functioning is based upon Plaintiff's reported history of being "fired for angry outbursts at work."  (Tr. 355).  However. Dr. Weech takes care to note that his evaluation is limited to "patient interview and history.  Have not observed patient in work setting."  (Tr. 356).  Ironically, Plaintiff criticizes the ALJ for referencing that aspect of Dr. Weech's report on the basis that "psychiatrists never visit workplaces to evaluate their patients."  (Doc. 5 at 4).  Obviously, Dr. Weech himself was aware of that fact.  Presumably, both the ALJ and Dr. Weech stated the obvious in part to emphasize the clinically limited data on which Dr. Weech's report was based.

11

Plaintiff argues in her reply memorandum that Dr. Weech's report should be viewed as if he had observed Plaintiff over a longer period of time, because Dr. Weech relied on patient "history," which included therapy visits with Ms. Calkins begun nine months previously, in November 2009, as well as a psychiatric assessment dated two days prior to completion of the RFC form.  Because the form was jointly completed by Ms. Calkins and Dr. Weech, Plaintiff further asserts that the ALJ should have deferred to its conclusions.  Plaintiff boldly proclaims that "[u]nder SSR 06-3p, the therapists' opinion is entitled to as much weight, if not more, than Dr. Weech's, due to her more frequent contact with Claimant…"  (Doc. 7 at 2).  However, a social worker like Ms. Calkins is neither a "treating source" nor an "acceptable medical source" under Social Security Regulations. *See* 20 C.F.R. §§404.1502; 416.902.  Unlike the opinions of Dr. Weech, the opinions of Ms. Calkins are not entitled to controlling weight and must instead be evaluated under the category of "other" medical sources.  *See, id.*  Plaintiff overstates SSR 06-3p, which merely permits the Commissioner "to give more weight to the opinion of a medical source who is not an 'acceptable medical source' if he or she has seen the individual more often than the treating source and has provided better supporting evidence and a better explanation for his or her opinion."  *Id.* at *5.  While the opinions must still be considered, because Ms. Calkins was not an acceptable medical source, the ALJ was not required to provide good reasons for the weight given to those opinions.  *See Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007).

In any event, the ALJ adequately discussed the opinions expressed in the jointly-prepared report, and expressly referenced Ms. Calkins' treatment notes, including but not limited to the fact that Plaintiff continued to improve throughout the course of her

conservative counseling treatment, particularly after beginning medication in July 2010. (*See, e.g.,* Tr. 16-17, discussing therapy notes that "continued to document improved coping skills with panic attacks," and "described the claimant's mood as euthymic.").

The fact that Dr. Weech relied upon Plaintiff's "history" is not equivalent to his own longitudinal relationship with Plaintiff.  In contrast to Dr. Weech, the ALJ had access to Plaintiff's complete historical records. Those records reflect that Plaintiff previously denied problems in the workplace, including to Dr. Connor.  (Tr. 272).  In fact, Plaintiff reported that she liked helping people and had never been fired due to an inability to get along with others.  (Tr. 16-17, 193, 297).

The ALJ also noted psychological evidence that contradicted the most extreme opinions offered by Dr. Weech, including Dr. Connor's finding that Plaintiff's social anxiety was "mild," the mild findings in Plaintiff's initial psychological assessment, and the mild findings reflected in Ms. Calkins' therapy records.  The ALJ also noted that the nature and frequency of Dr. Weech's treatment (3 medication check visits, *see* Tr. 367-70, 391-92) was inconsistent with the level of disability assessed, and that the more extensive notes of Plaintiff's therapist suggested improvement over time.

Defendant points out that in some cases, courts have declined to categorize a physician as a "treating physician" after so brief a relationship.  *Accord Smith*, 482 F.3d at 876 (holding that two physicians who examined claimant only once prior to completing RFC forms were not entitled to benefit of treating physician rule).  In this case, however, Dr. Weech continued to treat Plaintiff after completing the questionnaire, and the ALJ properly characterized him as a treating physician.  At the same time, the ALJ appropriately considered "the length of the treatment relationship and the frequency

of examination, the nature and extent of the treatment relationship, supportability of the opinion [and] consistency of the opinion with the record as a whole." *See Blakley*, 581 F.3d at 406; *see also* 20 C.F.R. §404.1527(c)(2).

The ALJ's added consideration of Plaintiff's report of her activities of daily living was reasonable.   Plaintiff reported going out in public and using public transportation, socializing, including going out to dinner and spending time with friends, and engaging in hobbies like reading and fishing. (Tr. 12, 189-190).  Plaintiff has no difficulties in caring for herself or performing household chores.  (*Id*, *see also* Tr. 332, 359).  Plaintiff also reported to her therapist in 2011 that she was supposed to be babysitting her sister's six children only four days per week, but felt taken advantage of because her sister had left them with her for more than two weeks. (Tr. 380).  Thus, the ALJ reasonably determined that Plaintiff's reported activity level – as part of the totality of the evidence- was inconsistent with the level of social anxiety reported by Dr. Weech.

In view of the record as a whole, the ALJ did not err either by rejecting the most extreme portions of Dr. Weech's/Ms. Calkins' opinions in calculating Plaintiff's mental RFC.  Furthermore, the ALJ provided "good reasons" for affording Dr. Weech's opinions "little weight."

### 2.  Consideration of All Relevant Evidence

In another assignment of error, Plaintiff criticizes the ALJ for "selectively" discussing only evidence that supported the denial of benefits, while ignoring evidence in Plaintiff's favor.   Plaintiff provides two specific examples:  (1) an alleged factual error in failing to recognize that Plaintiff received mental health treatment prior to 2009; and

14

(2) the ALJ's failure to accept the opinions of examining psychologist, Dr. Connor.  The undersigned finds no reversible error in the ALJ's review of the evidence.

### a.  Plaintiff's Prior Mental Health History

The ALJ stated that "despite claiming a long history of emotional and mental problems, the record documents a complete absence of mental health treatment" up until the date of Dr. Connor's examination.  (Tr. 15).  Plaintiff asserts that this is a misrepresentation of the record, because one exhibit "actually records anxiety issues since childhood…[and that] she was treated at PES three times since 2002, most recently in 2007."  (Doc. 5 at 7).  Plaintiff argues that the ALJ improperly relied upon Plaintiff's lack of consistent mental health treatment prior to 2009 to justify a ruling of non-disability after 2009.

Any misstatement by the ALJ concerning Plaintiff's admittedly sparse mental health treatment prior to 2009 was, at most, harmless error.  The records are extremely limited, and reflect, at most, brief and sporadic treatment.  Plaintiff fails to explain how acknowledging the evidence of such limited treatment years prior to Plaintiff's alleged onset of disability could have impacted the outcome of this case.

### b.  Dr. Connor's Report

As previously indicated, Dr. Connor evaluated Plaintiff in connection with claimant's pending criminal charge of flagrant non-support.  (Tr. 15).  Because Dr. Connor performed a one-time evaluation, he is not considered a "treating physician" whose opinion would be entitled to "controlling" weight.  Nevertheless, the ALJ considered his report as an examining psychologist.

As part of his evaluation in the context of the pending criminal charges (which apparently arose from Plaintiff's lack of employment income), Dr. Connor diagnosed Plaintiff with PTSD; major depression; social phobia, mild, with panic attacks; and personality disorder with avoidant and dependent features.  (Tr. 274).  Dr. Connor concluded that Plaintiff's "psychiatric condition compromises her ability to work," suggested that she "should be on disability" and opined that she is "in grave need of psychiatric care."  (Tr. 275).   Despite being requested to do so, Dr. Connor declined to offer any specific opinions on Plaintiff's functional limitations.  (Tr. 277-278).  Instead, he broadly conjectured that it is "quite difficult for [Plaintiff] to function normally," and that it "has been extremely challenging for [Plaintiff] to become a consistent and productive employee."   (Tr. 275).

Plaintiff argues that because she "faced the prospect of incarceration" from her failure to work and earn income to pay child support, her claim (and by inference, Dr. Connor's opinion) should be viewed as more credible.  Plaintiff adds that because the record does not reflect jail time, the criminal court must have concluded, like Dr. Connor, "that she was not employable."  (Doc. 7 at 6).

Plaintiff's assertion is pure speculation at best; she cites no evidence of such a conclusion.   The undersigned's own review finds evidence that Plaintiff was incarcerated in Kentucky for four months, followed by a period of home incarceration, with the case having been dropped pending a decision on Plaintiff's social security application.[3]   (Tr. 292-293, 334).  More to the point, the determination of whether a claimant is incapable of work is reserved to the Commissioner.

---

[3]In contrast to Plaintiff's position, the latter reference suggests motivation to exaggerate symptoms in order to avoid further criminal prosecution for non-support.

To that end, the ALJ discounted Dr. Connor's opinion that Plaintiff is disabled in part because the opinion was provided "to determine the claimant's competency to stand trial for felony charges, not her ability to function in a work setting." (Tr. 15). In addition, the ALJ reasoned that the Plaintiff's reported symptoms and Dr. Connor's observations were "transient and expectable reactions to the…pending felony charge and upcoming trial." (Tr. 16). The ALJ noted that Dr. Connor reported that Plaintiff was taking no psychiatric medications, retained normal memories, and suffered from only mild paranoia, with "no indication of severe mood swings, suicidal ideations, or diminished cognitive capacity." (*Id.*).

The ALJ also referenced the following statement by Dr. Connor: "Although I believe that her symptoms are legitimate, she does sometimes exaggerate symptoms as she feels this is the only way she can get attention for her problems." (Tr. 274). Last, the ALJ pointed out that Plaintiff provided Dr. Connor with contradictory information about her educational history, as well as other details. (Tr. 16, 271). While the educational data may not be highly relevant, the ALJ did not err in including that inconsistency as one of several reflected in Dr. Connor's report. (Tr. 16). Further, Dr. Connor's mild observations were in contrast to Plaintiff's subjective reports, yet were consistent with the more mild findings by subsequent consulting evaluators. (Tr. 15-16).

Plaintiff accuses the ALJ of mistakenly viewing the Plaintiff as "relatively normal." (Doc. 5 at 6) by focusing on select portions of the record and ignoring Dr. Connor's opinion that Plaintiff should be on disability. But the ALJ does not unfairly depict Plaintiff as "normal" merely by referencing some "normal" findings when describing her records. (Tr. 16). Rather, the ALJ agreed that Plaintiff suffers from "severe" mental impairments,

17

but concluded that her resulting functional limitations do not completely preclude her from all employment.

Plaintiff focuses on the portions of Dr. Connor's report wherein he describes Plaintiff's history of childhood trauma and tearfulness, and concludes that her symptoms are "legitimate." (Tr. 274). Notwithstanding Dr. Connor's conclusory opinion that Plaintiff "should be on disability," the ALJ was not required to accept his opinion that Plaintiff's ability to work is "compromised" as unequivocal evidence that Plaintiff's functional skills are so limited that she cannot work at all. Instead, the record reflects that the ALJ appropriately considered Dr. Connor's opinion in the context of the record as a whole, before reasonably discounting the small portion of his opinion that supported Plaintiff's disability claim.

### c. Other Consulting Reports

In addition to the report of Dr. Connor, the ALJ reviewed the reports of two other psychological consultants. In July 2009, state agency psychologist Dr. Holye opined after a review of Plaintiff's records that Plaintiff could perform "moderately complex work tasks in an environment that is relatively static" and "interact with others occasionally and superficially." (Tr. 315-16). In October 2009, a second agency psychologist, Dr. Lewis, concurred with Dr. Hoyle's opinions. (Tr. 317). Although the opinions of non-examining consultants are generally afforded less weight than those of examining consultants, in this case the ALJ adequately explained his reasons for giving them "some" weight. (*See* Tr. 18-19). Ultimately, the ALJ found Plaintiff to be more limited in social functioning and in concentration, persistence and pace than did the non-examining psychologists. (Tr. 19). Therefore, the ALJ properly evaluated the record as

18

a whole, and did not simply view Plaintiff's level of impairment through rose-colored glasses.

### d.  The Totality of the Evidence/ Substantial Evidence Standard

As stated, Plaintiff's central argument is that the ALJ cherry-picked records to support a non-disability conclusion, while ignoring evidence or more serious limitations. For example, Plaintiff argues that the ALJ ignored evidence that Plaintiff reported that "she is troubled by anxiety, her chest will hurt and she doesn't like to go out," as well as that she "has problems sleeping."  (Doc. 5 at 7, citing Tr. 293).   Plaintiff contends that the serious symptoms reflected in Ms. Calkins' notes should have been more extensively discussed.  Plaintiff also criticizes the ALJ for  citing to Plaintiff's report, on June 13, 2009, regarding "fishing, reading, and going to movies," because those activities were "prior to the alleged onset of her disability."  However, Plaintiff's claimed onset date is May 2009; therefore, the ALJ did not err by relying in part upon her June 2009 report.

Plaintiff reiterates that the ALJ should not have discounted her subjective complaints in determining that her diagnoses of PTSD and social anxiety were not "severe" impairments.  As previously discussed, Plaintiff's argument misses the mark to the extent that she believes that subjective complaints alone are sufficient to demonstrate mental disability.   The ALJ properly determined that two of Plaintiff's mental impairments (bipolar/mood disorder and panic disorder without agoraphobia) were "severe" while her two additional mental impairments (PTSD and social phobia) were non-severe.  To the extent that Plaintiff is attempting to raise an argument that the ALJ erred at Step 2 of the sequential analysis, the record supports the ALJ's

19

determinations.  Moreover, any error at Step 2 would not provide grounds for reversal when, as here, the ALJ clearly considered both severe and non-severe mental impairments in calculating Plaintiff's RFC.  *See Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987).

Plaintiff complains that with respect to the PTSD, the ALJ failed to specifically discuss one note wherein Plaintiff reported that "her level of anxiety is so high that it hurts and that the anxiety prevents her from living a normal life."  (Tr. 298).  However, the referenced record is not specific to Plaintiff's PTSD diagnosis, as opposed to her panic disorder.  Moreover, the ALJ cited to the referenced record, so it was considered.

As additional examples, Plaintiff contends that the ALJ ignored evidence that: (1) she goes out to dinner only when accompanied by others; her report that she does not work because "I don't get along with people" (Tr. 332); and that she suffers from panic attacks frequently, and anxiety constantly (Tr. 334).  She further argues that the ALJ failed to discuss her difficult childhood including, sexual and physical abuse at the age of 13.  (Tr. 334).  Plaintiff complains that the ALJ failed to discuss testimony that she has angry outbursts, (Tr. 334), and allegedly "glosses over" Plaintiff's psychological evaluation by the Mental Health Access Point.  (Tr. 292-293).

Plaintiff further argues that the ALJ should not have based his decision in any way upon Plaintiff's report that she babysat her sister's six or seven children, because Plaintiff testified that her sister "dumped" the kids on her, that Plaintiff was unable to cope with the situation, and that Plaintiff threatened to call the police if the woman did not retrieve her children.   (Tr. 72-74).   However, other records support the ALJ's factual findings on this issue, as Plaintiff's testimony at the hearing was consistent with

her prior report to her therapist that she had agreed to babysit the children four days per week, and only refused after her sister took advantage of her by leaving the children for more than two weeks. (Tr. 380).

The ALJ was not required to discuss each and every page of the record.  There is no legal requirement that an ALJ refer to every medical note; indeed, such a feat would be impossible in the overwhelming majority of cases.  In this case, the ALJ reviewed the substance of Plaintiff's evaluations and treatment notes, (see Tr. 16-18), and accurately inventoried the complaints that Plaintiff reported.  (Tr. 15-19).  The ALJ did not in any way ignore evidence of Plaintiff's anxiety, but instead concluded that she suffers from the "severe" impairment of panic disorder.  The ALJ also accurately summarized the opinions of all examining mental health providers, as well as the opinions of two state agency consultants.  (Tr. 15-18).  While Plaintiff accuses the ALJ of selectively focusing on evidence that supports his opinion, Plaintiff's own Statement of Errors fails to discuss the substantial evidence that exists that her condition is not disabling.  For example, the Access Point intake evaluation on which Plaintiff heavily relies assigned Plaintiff a GAF score of 56, which indicates moderate symptoms but is generally not inconsistent with the ability to work.  (Tr. 291, 293).   Finally, the ALJ reviewed the testimony given by the Plaintiff and her activities of daily living.

The ALJ's overall analysis does not reflect a studious attempt to ignore all favorable evidence. For example, the ALJ specifically acknowledged the various diagnoses found by Dr. Connor, the fact that Plaintiff's GAF score actually decreased (worsened) between the Access Point assessment in March 2009 and Dr. Connor's assessment in May 2009, and the fact Plaintiff's therapist at times reported that Plaintiff

21

expressed more serious complaints of depression, anxiety, and PTSD. (Tr. 15-17). However, the ALJ carefully evaluated the *totality* of the evidence, including clinical observations by Ms. Calkins that showed overall improvement with treatment, as well as contradictions in Plaintiff's evaluative reports and in other evidence of record, including but not limited to Plaintiff's daily activity level.

The fact that the record may contain substantial evidence to support a different conclusion does not mean that remand is required, so long as substantial evidence supports the conclusion reached by the Commissioner. In this case, the record as a whole supports the non-disability determination made by the ALJ.

### 3. Hypothetical to the Vocational Expert

The VE testified, and the ALJ found, that based upon Plaintiff's mental limitations, she could not return to her prior relevant work, but that she could perform other jobs. (Tr. 19). Plaintiff initially argued that the VE erred by testifying that she could perform the job of cleaner at both the medium or light exertional levels, because the "medium" level job, according to the Dictionary of Occupational Titles ("DOT"), requires a person to "apply common sense understanding to carry out detailed but uninvolved written or oral instructions." However, after review of the Commissioner's response to that claim, Plaintiff withdrew it. (Doc. 7 at 7). The undersigned has concluded that substantial evidence in the record supports the mental RFC determined by the ALJ. Therefore, the testimony of the VE confirms that substantial evidence exists to uphold the Commissioner's decision. *See Varley v. Sec. of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

### III.  Conclusion and Recommendation

For the reasons discussed, the ALJ committed no reversible error.  His finding of non-disability is supported by substantial evidence in the record as a whole; therefore, IT IS RECOMMENDED THAT the Commissioner's decision to deny Plaintiff DIB and SSI benefits be AFFIRMED, and that this case be CLOSED.


*s/ Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

MELODY INMAN,                                    Case No. 1:11-cv-838

       Plaintiff,                                    Beckwith, J.
                                                      Bowman, M.J.

    v.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

       Defendant.

## NOTICE

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That periConnorod may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).